UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANTWONE LONEZO WILSON,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | Case No.  2:19-cv-1746-AMM-GMB |
| ) | |
| WEXFORD HEALTH, *et al.*,  ) | |
| ) | |
| Defendants.  ) | |

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The plaintiff filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the Constitution or laws of the United States. Doc. 1. The plaintiff names the following defendants in the complaint: Wexford Health, Ms. Bourque, and Mr. Spencer. Doc. 1 at 2–3. The plaintiff seeks $50,000 in damages from each defendant and injunctive relief requiring that Wexford Health better train its nurses and mental health professionals in handling inmate suicide attempts. Doc. 1 at 5. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned Magistrate Judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

### **I. STANDARD OF REVIEW**

The Prison Litigation Reform Act ("PLRA"), partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against

government officers or employees. The court must dismiss a complaint or any portion thereof that it finds to be frivolous, malicious, seeking monetary damages from a defendant immune from monetary relief, or not stating a claim upon which relief can be granted. Moreover, the court may *sua sponte* dismiss a prisoner's complaint prior to service. *See* 28 U.S.C. § 1915A(a).

Under § 1915A(b)(1) and § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist. *Id*. at 327.

Additionally, a complaint may be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. A review on this ground is governed by the same standards as dismissals for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). To state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to relief.'"

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & 557 (2007) (alteration incorporated). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim also is warranted. *Jones v. Bock*, 549 U.S. at 215.

A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015). However, it still must contain factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

## II. FACTUAL ALLEGATIONS

The plaintiff is an inmate in the Donaldson Correctional Facility in Bessemer, Alabama. Doc. 1 at 2. On October, 18, 2019 at approximately 8:00 a.m., he alleges that he told Nurse Galinda that "[he] was about to kill [him]self." Doc. 1 at 11. She responded that she would give this information to Defendant Spencer. Doc. 1 at 11.

At approximately 8:20 a.m., Officer Stephen took the plaintiff to see Defendant Spencer in the mental health building. Doc. 1 at 11. The plaintiff states that he "was asked several questions by Mr. Spencer while in the office." Doc. 1. at 11. The plaintiff told Mr. Spencer that he had taken 12 pills about 20 minutes before,

3

identified the types of pills, and said that he was feeling dizzy and had vomited twice. Doc. 1 at 11.  Spencer responded that the plaintiff would be "alright," and explained that he did not believe the plaintiff took that many pills because he would be dead if he had. Doc. 1 at 11.  The plaintiff asked Spencer if he could be taken to the infirmary, but Spencer refused because Spencer thought he "was playing because [he] had a history of malingering." Doc. 1 at 11.  Spencer then asked the plaintiff if he was suicidal and homicidal, and the plaintiff smiled "because [he] was high on all the pills." Doc. 1 at 11.  Spencer said he was going to send the plaintiff back to his cell. Doc. 1 at 11.  The plaintiff told Spencer that he was going to hang himself or cut his wrists when he got back to his cell, and Spencer said, "OK." Doc. 1 at 11.

As the plaintiff was leaving, he stopped at Defendant Bourque's office and told her that he had just told Spencer that he was going to kill himself. Doc. 1 at 11. The plaintiff told Bourque that Spencer sent him back to his cell, to which Bourque responded, "OK I hear you, and don't go harm yourself." Doc. 1 at 11.  The plaintiff repeated that he was going to kill himself, and Bourque only shook her head. Doc. 1. at 11.

Officer Stephen took the plaintiff back to his cell at approximately 8:45 a.m. Doc. 1 at 11.  The plaintiff states that in his cell he "got a screw out of the metal case light bulbs are held in on [the] wall," and then he "started c[ar]ving in [his] skin and flesh until it started bleeding out." Doc. 1 at 11–12.  At 9:00 a.m., the plaintiff told

4

Officer Sutton he was trying to kill himself and showed him his wrist. Doc. 1 at 12. Officer Sutton told him that he would let someone in mental health know about his complaint. Doc. 1 at 12.

At 9:45 a.m., Bourque and an officer came to the plaintiff's cell and asked to see the plaintiff's wrist. Doc. 1. at 12.  Bourque told the plaintiff that he "wasn't going to die because she had a scratch on her foot bigger th[a]n the scratch on [his] wrist." Doc. 1 at 12.  After Bourque left, the plaintiff continued cutting his wrist. Doc. 1 at 12.

At 10:45 a.m., the plaintiff showed his wrist to Sgt. Fleeton and told him that Spencer and Bourque were refusing him medical treatment for being suicidal. Doc. 1 at 12.  Sgt. Fleeton told the plaintiff that he would talk to Spencer. Doc. 1 at 12. Sgt. Fleeton returned at 10:50 a.m. and told the plaintiff that Spencer would send for him. Doc. 1 at 12.  The plaintiff began yelling that he was bleeding and needed help. Doc. 1 at 12.  Ms. Hackworth heard the plaintiff and told him that she would tell Spencer. Doc. 1 at 12.  After waiting 20 minutes, the plaintiff started yelling again. Doc. 1 at 12.  Ms. Armstead and Ms. Holmes heard the plaintiff and told him they would alert Bourque or Spencer. Doc. 1 at 12.

At 2:00 p.m., Officer Stephen took the plaintiff to Bourque's office, where Bourque took pictures of the plaintiff's wrist with her cellphone. Doc. 1 at 12. Spencer called Nurse Galindo to complete a body chart on the plaintiff. Doc. 1 at 12.

Nurse Galindo wrote down the plaintiff's complaints about being taken back to his cell. Doc. 1 at 13.  Officer then took the plaintiff to a crisis cell, where he remained on suicide watch until October 21, 2019. Doc. 1 at 13.

While in the mental health building, Nurse Supervisor Bassette asked the plaintiff if he had a complaint. Doc. 1 at 13.  The plaintiff told her what transpired on October 18, 2019, and Nurse Bassette explained that "it was a clinical decision for Ms. Bourque and Mr. Spencer to ignore [his] suicide complaint and send [him] back to [his] cell." Doc. 1 at 13.  The plaintiff responded that Nurse Bassette was covering for Bourque and Spencer and said he was going to write the Investigation and Intelligence division and file a lawsuit. Doc. 1 at 13.

## III. ANALYSIS

The plaintiff alleges that his "constitutional rights under the Eighth Amendment were violated by Ms. Bourque and Mr. Spencer because they illegally denied [him] medical treatment by ignoring [his] suicide complaint for several hours and delayed sending [him] to a crisis cell." Doc. 1 at 13.

**A.    Claims Against Bourque and Spencer**

The plaintiff alleges claims against Bourque and Spencer in both their individual and official capacities and seeks an award of monetary damages. Doc. 1. The official capacity claims are due to be dismissed.  The Eleventh Amendment bars official capacity claims against state prison officials for money damages. *Kentucky*

*v. Graham*, 473 U.S. 159, 169 (1985).

The individual capacity claims do not suffer the same fate. "[D]eliberate indifference to an inmate's need for mental health care is actionable on eighth amendment grounds." *Greason v. Kemp*, 891 F.2d 829, 834 (11th Cir. 1990). However, "[m]edical treatment violates the eighth amendment only when it is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted). In fact, "[t]here can be no deliberate indifference to an inmate's safety . . . unless there was a 'strong likelihood, rather than a mere possibility, that suicide would result from a defendant's actions or inaction.'" *Heggs v. Grant*, 73 F.3d 317, 320 (11th Cir. 1996) (citation omitted).

The Magistrate Judge finds that the plaintiff's allegations warrant a substantive response from Defendants Bourque and Spencer as to the plaintiff's claim of deliberate indifference to his mental health needs. Accordingly, an order for special report will follow this report and recommendation in the event it is adopted by the District Court.

**B.     Wexford Health**

Although the plaintiff names Wexford Helath as a defendant, he does not make a specific claim against Wexford Health. Doc. 1. To the extent he attempts to bring claims based on a theory of supervisory liability, the plaintiff may not assert a

claim for deliberate indifference to his medical needs against a corporation based on the actions of its employees.  For § 1983 liability to attach to a private corporation providing medical care, a plaintiff must demonstrate that his constitutional rights were violated as a result of an established policy or custom of that corporation. *Buckner v. Toro*, 116 F.3d 450, 452–53 (11th Cir. 1997).  Liability under § 1983 may not be based solely on the corporation's role as the supervisor of the doctors or nurses who provided the plaintiff's care. *See, e.g.*, *Massey v. Montgomery County Det. Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).  Because the plaintiff does not assert a corporate policy or custom as the cause of a constitutional violation, his claim against Wexford Health is due to be dismissed. *Id.*

## IV.  RECOMMENDATION

For the reasons stated above, the undersigned RECOMMENDS as follows:

(1)   The claims asserted against Bourque and Spencer in their official capacities be DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1915A(b)(1) for seeking monetary damages from a defendant immune from monetary relief;

(2)   The claims asserted against Wexford Health be DIMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief can be granted;

(3)   The remaining claims be REFERRED to the undersigned for further

proceedings.

## V.  NOTICE OF RIGHT TO OBJECT

The plaintiff may file specific written objections to this report and recommendation.  The plaintiff must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting.  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. The plaintiff may only appeal from a final judgment entered by a district judge.

DONE and ORDERED on November 12, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE